[No. 53-40589-2.    Division Two.    June 11, 1970.]

EARL SHERMER et al., *Respondents*, v. ELTON BAKER et al., *Appellants*.

846

*Short, Cressman & Cable, John H. Strasburger,* and *Edward R. Langenback, Jr.,* for appellants.

*Beresford & Booth, Robert W. McKisson,* and *Wayne C. Booth,* for respondents.

PETRIE, J.—Prior to November, 1966, defendants, Elton Baker and Letha Baker, his wife, owned 2,128 shares (80.67 per cent) of the common stock of Olympic Telephone Company, Inc.; and plaintiffs, Earl Shermer and Etta Shermer, his wife, owned 228 shares (8.64 per cent). On November 11, 1966, Shermer sold his stock, through Baker, to the corporation for $10,000 ($43.86 per share). Slightly more than 3 months later, Baker executed an option agreement (subsequently exercised by the grantee) for the sale of his shares of stock for $600,000 ($281.95 per share).

In June, 1967, Shermer instituted this action against Baker, alleging that the true value of his stock in November, 1966, had been not less than $281.95 per share; that at the time of sale, Baker, managing officer and majority stockholder, failed to disclose to him a material fact bearing on the then value of his minority stock ownership, namely: that, despite having told Shermer on repeated occasions that he would not sell the controlling interest in the company, Baker had, prior to November 11, 1966, received of-

fers for the sale of said controlling interest, which offers were not disclosed to Shermer; and that said undisclosed information constituted a material fact affecting the value of Shermer's stock. The matter was tried to a jury which returned a verdict in favor of plaintiff, Shermer. Baker has appealed from the judgment subsequently entered upon the verdict. The appeal sets forth 22 separate assignments of error, which however, may be consolidated into five issues:

1. Does the Securities Act of Washington (RCW 21.20) create an implied civil cause of action available to a seller of stock certificates against the purchaser thereof?

2. Did a fiduciary relationship exist between Baker and Shermer?

3. Did defendant fail to disclose to plaintiff a "material fact"? Was the jury properly instructed as what a material fact is?

4. Is "scienter" one of the necessary elements to plaintiff's cause of action?

5. Did the trial court improperly admit exhibit 19, an anonymous letter to the editor of the Kitsap County Herald, for consideration by the jury?

We consider, first, defendant's major issue: Does the Securities Act of Washington create an implied civil cause of action on behalf of a seller of stock? RCW 21.20.010 provides as follows:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Defendant contends that this section, enacted in 1959 (Laws of 1959, ch. 282) establishes certain general duties re-

garding the offer, sale or purchase of any security, but it does not create any liability for its violation nor does it provide for any enforcement by either an individual or the state. Bolstering this contention, defendant points to RCW 21.20.430, the "CIVIL LIABILITIES" subdivision of the Securities Act of Washington, which specifically creates a cause of action solely against a *seller* of securities under specified circumstances, but entirely omits creation of a cause of action against a *purchaser* of securities. Further, defendant points to the injunctive and criminal enforcement provisions of the act, which provide remedies for *any* violation[1] of *any* provision of the act or of *any* rule or order promulgated by the agency charged with responsibility for enforcing the act. Based upon these considerations, defendant argues that the legislature's failure to include a specific section providing for enforcement, by civil process, of violation of RCW 21.20.010, constitutes a deliberate and intentional omission which demands interpretation that no statutory civil action lies against a purchaser of stock certificates under the 1959 act.

Defendant acknowledges that the legislature, itself, established an "intent" section within the act. RCW 21.20.900 provides:

> This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.

The legislature's admonition to construe the act so as to "coordinate the *interpretation* and administration of this chapter with the related federal regulation" brings us forcefully into contact with and consideration of rule 10b-5[2]

---

[1] Criminal penalties apply only in the event of a "willful" violation. RCW 21.20.400.

[2] 17 C.F.R. 240.10b-5: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

of the Securities and Exchange Commission which (except for the jurisdictional aspects of its application to a matter involving interstate commerce) is strikingly similar to, and for all practical respects precisely the same as, RCW 21.20.010, which we are required now to interpret.

There can be little doubt that rule 10b-5, first promulgated as Regulation X-10B-5 on May 21, 1942, pursuant to provisions of section 10(b) of the Security and Exchange Act of 1934, and its subsequent interpretations, constituted one of the most significant developments in the world of commerce in the twentieth century. Although it, too, embraced no express civil cause of action on behalf of a seller of securities, the federal courts, as early as 1946, had little or no difficulty determining that an implied cause of action exists on behalf of a seller of securities whose purchaser had violated the regulation. *Kardon v. National Gypsum Co.,* 69 F. Supp. 512 (E.D. Pa., 1946). Long before the enactment of the Securities Act of Washington in 1959, an implied civil remedy had been firmly established in federal jurisdictions. *Slavin v. Germantown Fire Ins. Co.,* 174 F.2d 799 (3d Cir. 1949); *Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2d Cir. 1951); *Fratt v. Robinson,* 203 F.2d 627, 37 A.L.R. 636 (9th Cir. 1953). *See also* Annot. 37 A.L.R.2d 649 (1954).

▆ Prior to 1959, the effect of *Kardon* and its progeny had been (and continues to be) a favorite topic for many law review articles.[3] It seems inconceivable to us that the

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

[3]52 Mich. L. Rev. 893 (1953-54), at 896 declares:

"Since the *Kardon* case, the various district and circuit courts have been in substantial agreement on the proposition that section 10(b) and X-10B-5 create an implied civil liability." (Footnote omitted.) 32 Texas L. Rev. 197, 198 (1953-54) declares: "Since the decision in the *Kardon* case, unhappy investors have been flocking to the federal courts for relief under Rule X-10B-5." *See also:* 59 Yale L. J. 1120 (1950); 40 Minn. L. Rev. 62 (1955); 100 U. of Pa. L. Rev. 463 (1951).

legislature, in 1959, could have intended that RCW 21.20.010 created for intrastate commerce something different from what rule 10b-5 created for interstate commerce. We hold, therefore, that when a purchaser of securities (other than "by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange") violates the provisions of RCW 21.20.010, "any person" injured as a result of such violation has an action for damages in the courts of the state of Washington.

Having determined that a cause of action lies, and before considering defendant's other specific assignments of error, we deem it advisable to determine the applicable general principles which flow from the statute. We find those general principles eminently well stated by Chief Judge Leahy in *Speed v. Transamerica Corp.*, 99 F. Supp. 808, 828 (D.C. Del. 1951):

> The rule is clear. It is unlawful for an insider, such as a majority stockholder, to purchase the stock of minority stockholders without disclosing material facts affecting the value of the stock, known to the majority stockholder by virtue of his inside position but not known to the selling minority stockholders, which information would have affected the judgment of the sellers. The duty of disclosure stems from the necessity of preventing a corporate insider from utilizing his position to take unfair advantage of the uninformed minority stockholders. It is an attempt to provide some degree of equalization of bargaining position in order that the minority may exercise an informed judgment in any such transaction. Some courts have called this a fiduciary duty while others state it is a duty imposed by the "special circumstances". One of the primary purposes of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., was to outlaw the use of inside information by corporate officers and principal stockholders for their own financial advantage to the detriment of uninformed public security holders.

We move now to consideration of several other issues

raised in this appeal. By instruction 8,[4] the trial court advised the jury plaintiff had the burden of proving that defendant violated one or more of the legal duties imposed upon him by law, and that plaintiff suffered damages because of such violation. In instruction 9,[5] the court advised the jury of two of those legal duties, quoting precisely the language used in subsections (2) and (3) of RCW 21.20.010. We find no error in the giving of these instructions. Next followed the most controversial of all the instructions given. Because of its importance in resolving several issues presented by the appeal, we set it forth in full:

### 10

The defendants, and each of them, as officers, directors, and majority shareholders of the Olympic Telephone Co. Inc., were in a fiduciary relationship to the Corporation, and all the stockholders thereof. This means that they owed their utmost good faith and undivided loyalty to the corporation as a whole, and to all of, and each of, the stockholders. In particular, the defendants each owed these legal duties to the plaintiffs, as stockholders:

---

[4] Instruction 8: "The plaintiff has the burden of proving each of the following propositions:

"First, that the defendant violated one or more of the legal duties owed by him to the plaintiff, which duties are described in these instructions;

"Second, that plaintiff suffered damages;

"Third, that the defendant's violation of one or more of the described legal duties caused the plaintiff's damages.

"If you find from your consideration of all the evidence that each of these propositions has been proved, your verdict should be for the plaintiff. On the other hand, if any of these propositions has not been proved, your verdict should be for the defendant."

[5] Instruction 9: "The laws of the state of Washington provide:

" 'It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.'

"The defendant in this case owed the plaintiff the legal duty to obey all provisions of this statute."

(1) Not to profit at the plaintiff's expense when to do so would not be in good conscience, or would work a fraud on the plaintiffs.

(2) To disclose fully to plaintiffs all material facts relating to their interest in, and actions affecting, the corporate stock and corporate assets involved in the fiduciary relationship, where such facts are known to defendants by virtue of their inside position, and are unknown to the plaintiffs.

We view this instruction as a declaration by the court, as a matter of law, that Baker, as managing officer, director and majority stockholder, stood in a "fiduciary relationship" not only to the corporation, but also to Shermer, as an individual minority stockholder. The court thereupon told the jury what legal duties befell Baker, as a matter of law, flowing from such a relationship. The court detailed two such duties (1) negatively, not to profit at plaintiff's expense; and (2) affirmatively, the duty of full disclosure of all material facts.

Defendants' objections to this instruction appear to fall into four categories: (1) it improperly advised the jury that the defendants, as officers, directors and majority stockholders, stood in a fiduciary relationship to plaintiffs, as stockholders; (2) it permitted the jury to consider a factual issue, defendants' duty "[n]ot to profit at plaintiff's expense", when there was no substantial evidence in the record to support that issue; (3) it permitted the jury to consider an issue, that defendants "owed their utmost good faith and undivided loyalty to the corporation as a whole", which was not before the court; and (4) it presented several concepts to the jury, e.g., "in good conscience", "work a fraud", and "their inside position", without further explanation or clarification, such that the jury was confused or misled by their vagueness. We consider these contentions seriatim.

(1) Whether defendant husband's duty be viewed from his position as director or managing officer, it is clear that he stood in a fiduciary relationship to the corporation as a whole. *Kane v. Klos*, 50 Wn.2d 778, 314 P.2d 672

(1957); RCW 23.01.360 (subsequently repealed effective July 1, 1967).

In any given jurisdiction, whether or not a managing officer or director has a fiduciary relationship to individual stockholders depends upon whether that jurisdiction follows what one text writer describes as the "older or so-called majority" rule that a director's trust relationship to the corporation does not extend to an individual stockholder in the sale and purchase of stock; the "minority" rule in which directors are considered trustees for individual stockholders with respect to their stock; or the "special facts" rule in which the director owes a limited fiduciary duty in transactions with a stockholder involving the transfer of stock. *See* W. Fletcher, Cyclopedia Corporations §§ 1167-1174 (perm. ed. rev. 1965). Although Washington formerly followed the majority rule, *O'Neile v. Ternes,* 32 Wash. 528, 73 P. 692 (1903); it now appears to follow the "special facts" rule. *Voellmeck v. Harding,* 166 Wash. 93, 6 P.2d 373, 84 A.L.R. 608 (1931). The limitation on the fiduciary relationship appears to apply to the circumstances under which the duty might arise and not on the extent of the obligation when once it has been determined that the relationship exists. In *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.,* 64 Wn.2d 375, 391 P.2d 979 (1964), the court declared at page 381:

> Certain basic concepts have long been recognized by courts throughout the land on the status of corporate officers and directors. They occupy a fiduciary relation to a private corporation and the shareholders thereof akin to that of a trustee, and owe undivided loyalty, and a standard of behavior above that of the workaday world. [Citations omitted.]
>
> . . .
>
> Directors and other officers of a private corporation cannot directly or indirectly acquire a profit for themselves or acquire any other personal advantage in dealings with others on behalf of the corporation.

Furthermore, the statute itself, RCW 21.20.010, as does rule 10b-5, creates a form of fiduciary relationship.

It is clear that the statute [§ 10b of the Securities and Exchange Act of 1934] was intended to create a form of fiduciary relationship between so-called corporate "insiders" and "outsiders" with whom they deal in company securities which places upon the insider duties more exacting than mere abstention from what generally is thought to be fraudulent practices.

*Kohler v. Kohler Co.*, 319 F.2d 634 (7th Cir. 1963) at 637.

In view of the foregoing, we find no error in the enumeration of Baker's legal duties as set forth in instruction 10.

(2) Defendants contend that there is no evidence to indicate that they profited from the *corporation's* purchase of plaintiffs' shares of stock. Indeed, defendants point to the fact that when Dr. Baker executed the option agreement, the only sale contemplated was the 2,128 shares which defendants owned. Subsequently, the corporate-held shares were added to the sale at no increase in price. However, plaintiffs established that the effect of retiring plaintiffs' 228 shares was to increase defendants' percentage ownership of outstanding shares from 80.67 per cent to 88.30 per cent; and thus the salability of defendants' stock, arguably, was enhanced. This factual question was properly presented to the jury.

(3) Defendants suggest that the portion of instruction 10 which declares defendants stood in a fiduciary relationship to the corporation (in contradistinction to the minority holders) could have permitted the jury to believe that defendants somehow had breached some undefined fiduciary duty owed to the corporation—an issue which was not in the case at all. We do not view this as a reasonable possibility under all the circumstances. The initial portion of instruction 10, containing the reference to the corporation as a whole, simply provided the jury with general considerations. The latter portion of the instruction particularized the "legal duties" which defendants owed to plaintiffs with sufficient exactitude to exclude any likelihood that the jury was so mislead or confused.

(4) Defendants next suggest that several otherwise undefined concepts were presented to the jury, permitting it

to speculate as to the specific meaning to be applied. We note, preliminarily, that defendants did not present any proposed instructions to the court purporting to present these concepts in clear, accurate and concise terms. Thus, the assignment of error may not be urged on appeal. The expressions, "in good conscience" and "their inside position", are not words of art which necessarily require further clarification for a jury. The expression, "work a fraud" is a concept which, conceivably, should have been specifically covered by an explanatory instruction. However, the court did instruct the jury as to the necessary elements of "fraud and deceit". We examine the propriety of this instruction *infra*.

We note that defendant next assigns error to the court's instruction 11 as to what constitutes a material fact. The instruction provided:

### 11

A "material fact" is a fact to which a reasonable man would attach importance in determining his choice of action in the transaction in question.

We find the instruction valid. *Rogen v. Ilikon Corp.*, 361 F.2d 260 (1st Cir. 1966); *Securities & Exchange Comm'n v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968). Furthermore, in the instant case, it is uncontroverted that minority stock holdings in a small telephone company have little or no market unless a sale of the bulk of stock is contemplated. Purchasers of such companies almost invariably acquire such holdings only if they may acquire 80 per cent of the outstanding stock, and prefer closer to 90 per cent of the stock. Whether or not such a contemplated sale existed and whether or not defendants failed to disclose to plaintiffs that offers of such a sale had been made were material facts to be resolved by the jury under proper instruction.

Next, we consider whether or not "scienter" is a necessary element of an implied cause of action under RCW

21.20.010. Instruction 12[6] of the court told the jury what elements were necessary before it could find that defendant had engaged in an "act, practice, or course of business" which operated as a "fraud or deceit". Noticeably absent from such an instruction (and also absent from the complaint) is any necessity, as required in an action brought under the theory of common law fraud, that the actor intend that his misrepresentation or improper concealment be acted upon by the person to whom the misrepresentation is made or from whom the omission was concealed.

In *Ellis v. Carter*, 291 F.2d 270 (9th Cir. 1961) the court made it abundantly clear that a showing of common law fraud, and in particular the element of scienter, is not essential to establish a claim based on rule 10b-5. Further, the same circuit has clearly enunciated the requirements of allegation and proof.

> In an action brought under section 10(b), common law fraud need not be alleged or ultimately proved. After establishing the use of some means of interstate commerce, the mails, or any national stock exchange facility . . ., Rule 10b-5(b), a proper implementation of section 10(b), only requires proof of a material misstatement or an omission of a material fact in connection with the purchase or sale of any security to make out a prima facie case.

*Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 212 (9th Cir. 1962).

Although, in interpreting the provisions of a state statute, we are not in any manner obliged to follow the opinion

[6]Instruction 12: "In order for you to find that defendants engaged in an 'act, practice, or course of business' which operated as a 'fraud or deceit' upon the plaintiffs, you must find the following to be established by a preponderance of the evidence:

"(1) That defendants made a false representation of an existing material fact or failed to disclose a material fact when under a duty to make such disclosure;

"(2) That plaintiffs were ignorant of the falsity of the representation, or of the existence of the fact not disclosed;

"(3) That plaintiffs relied on the truth of the representation, or on the non-existence of the fact not disclosed, and had a right to so rely;

"(4) That plaintiffs suffered consequent damage."

of the Ninth Circuit Court of Appeals' interpretation of a similarly worded federal statute, we are impressed by the logical argument presented and sound result obtained by the court in *Ellis v. Carter, supra.* Incidentally noticed, but not critically persuasive, is the uniformity which develops when the two statutes are interpreted in the same fashion. In *Ellis,* the court had been requested to overrule its prior decision in *Matheson v. Armbrust,* 284 F.2d 670 (9th Cir. 1960), which had declared that buyers as well as sellers who bring actions under rule 10b-5 should be provided the same remedy. After noting that rule 10b-5 could be subjected to four possible constructions, Judge Hamley speaking for the *Ellis* court reaffirmed *Matheson* as follows:

The instant suit is comprehended under our now settled construction of section 10(b) and rule 10b-5.

Appellees further argue that if we reaffirm Matheson we should at least hold that appellant must allege and ultimately prove genuine fraud, as distinct from "a mere misstatement or omission," to paraphrase the language of subparagraph (2) of rule 10b-5.

This is in effect a challenge to the validity of subparagraph (2) of the rule. It is predicated on the idea that a proscription of material misstatements and half-truths without using fraud or *scienter* language is not a permissible implementation of section 10(b).

We disagree. Section 10(b) speaks in terms of the use of "any manipulative device or contrivance" in contravention of rules and regulations as might be prescribed by the Commission. It would have been difficult to frame the authority to prescribe regulations in broader terms. Had Congress intended to limit this authority to regulations proscribing common-law fraud, it would probably have said so. We see no reason to go beyond the plain meaning of the word "any", indicating that the use of manipulative or deceptive devices or contrivances of whatever kind may be forbidden, to construe the statute as if it read "any fraudulent" devices.

(Italics by the court.) *Ellis v. Carter, supra,* at 274.

■ We, too, hold that in an action brought under RCW 21.20.010, a plaintiff need neither plead nor prove that defendant intended to deceive him by the misrepresentation

or omission. It is sufficient that the plaintiff relied upon the misrepresentation or omission of a material fact.

Defendants assign error to the admission into evidence of exhibit 19, an anonymous letter to the editor of the Kitsap County Herald, portions of which read as follows:

> I can't keep silent since last week's unfair article about the Olympic Telephone Company. The writer made it sound like the telephone company was forced to sell. Actually the owners had decided to sell in September, but tight money stopped it all. You have only to check with the sellers and the buyers. I did. Nobody knew that at the time but those two. Things went right on with most everyone working overtime and weekends.

Without detailing the chronology which lead up to the admission of this exhibit, we are convinced that the defendant's consent to its admission (after initial objection), coupled with the court's admonition to the jury, during trial and also by a sufficient instruction, that it was to be considered only as bearing on the plaintiff's state of mind after he read the letter, and coupled further with the fact that plaintiff sought its admission only after defendant had cross-examined plaintiff as to the contents of another letter to the editor, (exhibit 18 offered by defendant), which plaintiff had written to the editor of the same newspaper after having read exhibit 19, provided ample reason for the trial court's refusal to grant defendant's subsequent motion to withdraw both exhibits. *Lubin v. Cowell,* 25 Wn.2d 171, 170 P.2d 301 (1946).

Finally, defendant contends that the instructions as a whole were prejudicially repetitive and slanted in favor of plaintiff. We have carefully reviewed each instruction and have considered them as a whole. We find the trial court's instructions to the jury, as well as the conduct of the trial itself, involving a most complex series of issues, most of which are matters of first impression in this state, to be eminently fair, complete and nonrepetitive.

The judgment is affirmed.

ARMSTRONG, C. J., and PEARSON, J., concur.

Petition for rehearing denied August 3, 1970.