[No. 3096-1.   Division One.   July 26, 1976.]

GEORGE TURNER, ET AL, *Respondents*, v. DALE ENDERS, ET AL, *Appellants*.

---

[2]RCW 9.41.050.

*Boynton Kamb,* for appellants.

*T. Reinhard G. Wolff,* for respondents.

HENRY, J.*—Dale Enders and his wife, and Eastgate Mobile Homes, Inc., appeal from a judgment of $8,000 awarded to George Turner and his wife, and Robert Buckley for damages alleged to have resulted from fraudulent misrepresentations made by Dale Enders.

Dale Enders (hereinafter Enders) at all times pertinent to this case owned and operated a business called Eastgate Mobile Homes, Inc. (hereinafter Eastgate). Turner was hired as an employee of Eastgate on April 1, 1973, and was later promoted to sales manager.

In mid-July of 1973, Enders approached Turner and asked him if he would be interested in purchasing 40 percent of Eastgate for $8,000. Turner declined the offer because he was unable to raise the money.

In July of 1973, Turner, in his capacity as sales manager, hired Robert Buckley to work for Eastgate as a salesman. On July 20, 1973, Turner informed Buckley of the Enders' offer. Subsequently, on July 28, 1973, Enders stated to Buckley, "I'll offer you the same deal."

Turner and Buckley decided to purchase part of the business together. Turner borrowed $4,000 from Buckley and together they agreed to purchase the 40 percent interest in Eastgate, each acquiring 20 percent interest.

On August 1, 1973, Enders, Buckley, and Turner met to discuss the financial condition of Eastgate. The evidence is conflicting as to what was said at this particular meeting, but the trial court found that Enders informed Turner and Buckley that the business could anticipate $13,600 in net profit within the next 60 days from past sales and that the business had approximately $500 in debts and $2,000 in the

---

*Judge Edward E. Henry is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

checking account. Although the business had kept no books, a bookkeeper was hired.

The deal was not closed until August 24, 1973, when Buckley delivered to Enders two checks totaling $8,000 in exchange for which Buckley later received one block of 40 percent of the stock. This stock was registered in the name of Buckley and has not been transferred to Turner, nor offered back to Enders. When Buckley delivered the $8,000 to Enders, he asked Enders "Has the situation changed since the meeting of August 1st?" Enders' response was "basically the same."

Enders subsequently informed Turner and Buckley that he was going to loan $5,000 to the corporation for operating capital.

The mobile home inventory of Eastgate was financed by Island Savings and Loan Association by means of a "flooring plan," which worked as follows: whenever Eastgate needed a unit, a request would be made to the bank to pay the manufacturer for that unit. The unit would then be shipped to Eastgate and Eastgate would sign a note to the bank. Later when the unit was sold, Eastgate would pay the bank for the unit at the time the customer financed it. No unit was supposed to leave the Eastgate lot until the bank had been paid. In the event that a unit did leave the lot unpaid for, it was referred to as "out of trust."

Because Eastgate was having financial difficulties and Island Savings and Loan Association had one "out of trust" unit, Enders was notified on August 20, 1973, that there would be no more flooring after August 20, 1973.

On September 15, 1973, Turner and Buckley learned that before August 1, 1973, Eastgate had one unit "out of trust" with Island Savings and Loan Association and there was due on this unit $7,500. They also discovered that Eastgate was out of trust on another home to the Commodore Corporation and owed the amount of $6,295. Enders had not informed Turner and Buckley about these "out of trust" sales at the August 1 meeting nor thereafter.

Based on these facts, Turner and Buckley sued Enders

for misrepresentation "on a theory of tort." The trial court found that all nine elements of misrepresentation (fraud) had been proved and that Turner and Buckley had been damaged in the sum of $8,000, which was the amount of money they had paid to Enders.

Enders and Eastgate appeal.

The question to be decided is whether the nine elements of fraud were proven by clear, cogent, and convincing evidence. These nine elements are as follows:

(1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

*Webster v. L. Romano Eng'r Corp.*, 178 Wash. 118, 120-21, 34 P.2d 428 (1934).

The evidence must support a finding that Turner and Buckley relied on the representation. Moreover, Turner and Buckley had a duty to use diligence with respect to the representations made to them. *Williams v. Joslin*, 65 Wn.2d 696, 399 P.2d 308 (1965).

Enders denies that fraudulent representations were made. He contends that because Turner and Buckley were aware that the books were in a mess, they could not have relied upon what Enders said to them at the August 1, 1973, meeting.

Although the conversation on August 1, 1973, may not have been sufficient to establish fraud, Enders had been informed by an officer of Island Savings and Loan Association on August 20, 1973, just 4 days before Turner and Buckley paid the $8,000 to Enders, that the bank would no longer finance additional flooring to Eastgate. Thus, when Enders responded to Buckley on August 24, 1973, that there had been no change since August 1, 1973, Enders withheld

vital information. As this court stated in *Kaas v. Privette*, 12 Wn. App. 142, 149, 529 P.2d 23 (1974):

> It is now recognized generally that those facts must be disclosed which are so vital and material to a transaction that if known by one party and not the other, the agreement would be voidable. *In such circumstances, the failure to disclose the vital facts is fraudulent.*

(Italics ours.) *See also Sorrell v. Young*, 6 Wn. App. 220, 491 P.2d 1312 (1971).

Such evidence, therefore, justifies the statement of the trial court:

> It is rather clear to me that, at the time this transaction was entered into, the party who sought the investment and encouraged the plaintiff to come in, of course, was Mr. Enders. He was under the gun at that time; he had a partner he had to buy out. He had Island Savings and Loan [Association] breathing down his neck and he had The Commodore Corporation apparently after another $7,000 or more, and at the time this transaction took place he needed the money and he went after these two fellows who were logical prospects because they worked there.

There is also evidence that Enders had indicated to Turner and Buckley that he had been a graduate accountant in college and they, as a result, had the right to rely on his ability to know whether or not the company was in financial difficulty.

Based on this evidence, the court was justified in entering conclusion of law No. 3:

> That all nine elements of fraud were proved by the Plaintiffs by clear, cogent and convincing evidence.

We, therefore, affirm the decision of the trial court on the question of liability.

The question of whether or not damages had been proved, however, requires further consideration.

This was an action for damages sustained because of "misrepresentation in tort," not an action for rescission. Unlike *Kaas v. Privette, supra*, where the plaintiff tendered the stock back to defendants and brought an action to re-

scind, the stock here has not been returned. Therefore, Turner and Buckley have "thereby [waived] their right to rescission." *Salter v. Heiser*, 39 Wn.2d 826, 831, 239 P.2d 327 (1951).

When the plaintiff seeks to recover general damages caused by misrepresentation, the measure of damages is the "benefit of bargain." *McInnis & Co. v. Western Tractor & Equip. Co.*, 63 Wn.2d 652, 388 P.2d 562 (1964). When he seeks to recover damages not inherent in the "benefit of bargain" rule, he will be awarded damages for all losses proximately caused by the defendant's fraud. *Salter v. Heiser, supra* at 832.

There is no evidence here of special damages proximately caused by the misrepresentation nor is there evidence of the "benefit of bargain," *i.e.*, the difference between the value of the stock had the misrepresentations been true and the actual value.

Therefore, the judgment of the trial court is reversed on the question of damages and the cause remanded to determine the issue of the difference, if any, in the value of the stock as represented and its actual value, or the amount of damage proximately caused by defendant's fraud.

FARRIS and ANDERSEN, JJ., concur.