[No. 2321-2.   Division Two.   July 8, 1977.]

MARION C. LUDWIG, *Respondent*, v. MUTUAL REAL
ESTATE INVESTORS, ET AL, *Defendants*,
D. W. HELLRIEGEL, *Appellant*.

*Wolf J. Hellriegel,* for appellant.

*James M. Healy, Jr.,* and *Healy, Healy & Murdach,* for respondent.

REED, J.—Plaintiff Marion C. Ludwig initiated this action to recover her investment in Mutual Real Estate Investors (MRI), a limited partnership described as a mutual real estate fund designed to facilitate diversified investments in real estate by the pooling of individual resources. Defendant Hellriegel, president and principal (90 percent) owner of Investment Administrators, Inc., the general partner of MRI, appeals from that part of a Pierce County judgment holding him personally liable for violations of The Securities Act of Washington (RCW 21.20).

We find that there is insufficient evidence to support the imposition of personal liability, and accordingly, that portion of the trial court's judgment is reversed.

The prospectus of MRI provides that the general partner, Investment Administrators, Inc., is charged with the duties of supervising and administering the limited partnership, including the investment of its funds. Individual investors participate in MRI by purchasing a "Certificate of Partnership Agreement with Investor Partner," which is issued in a face amount of $1,000. On January 3, 1973, Mrs. Ludwig purchased 12 such certificates of investment for $13,200, of which $1,200 was payment of a sales commission and other transaction costs. The events that eventually culminated in Mrs. Ludwig's investment began when she was visiting a friend at University House, a retirement center owned by MRI and occupied by its limited partners. After expressing an interest in residing in the retirement facility, Mrs. Ludwig met with Donald Svare, administrator of University House and a sales representative of MRI. Mrs. Ludwig's testimony indicates that she received several informational brochures, that she also was given a copy of the prospectus, and that she signed a purchase agreement on January 3, 1973. Although she did admit to reading the prospectus, Mrs. Ludwig further testified that she only "sort of" understood its contents. That she did not fully comprehend the nature of her investment was evidenced by her expectation that she would receive 6 percent interest on the $13,200; when it became apparent to her that such interest would not be forthcoming, she sought the return of her money.

Section 4 of the prospectus grants each limited partner the right to redeem his certificates by signifying his intention to the partnership. In the event there are insufficient liquid funds available to redeem such certificates, there is further provision that the partnership shall be allowed a reasonable length of time to liquidate assets at market value so as to create the necessary cash. Mrs. Ludwig requested redemption in writing on October 8, 1973, and

when it became evident that MRI was unable to refund her money, she instituted the present action against MRI and defendant Hellriegel. On April 12, 1975, subsequent to the commencement of this action but prior to trial, MRI underwent dissolution proceedings and was placed in receivership.

At trial the principal issue framed by the pleadings was whether, as provided in the prospectus, a reasonable time had elapsed during which MRI could have liquidated sufficient assets so as to redeem plaintiff's investment. From the testimony at trial, it is apparent that a variety of events caused MRI's financial difficulties and ultimately resulted in its dissolution. Among the contributing factors were: (1) the revocation in 1971 of the building permit for a project known as the Alki Bonair development; (2) a summary judgment of approximately $50,000 against MRI and in favor of the contractor for the Alki Bonair project; (3) an increase in that judgment to $155,000 after a trial of the contractor's additional claims in August of 1973; (4) a sheriff's sale of the Alki Bonair realty, which MRI was unable to subsequently redeem; and (5) the filing in 1974 by several MRI limited partners of a federal suit for securities fraud. As a result of these and other problems, MRI had been able to satisfy only one of the 22 requests for redemption that were received prior to that of Mrs. Ludwig. The record indicates that the last such request that was honored had been made in August of 1970 and not satisfied until July of 1973. After considering this testimony, the redemption provisions of the prospectus, and the nature of the real estate business, the trial judge concluded that a reasonable time had not passed, and therefore held that Mrs. Ludwig was entitled to a judgment against MRI for only her pro rata share of the net assets of the dissolved partnership.

Additionally, and even though the issue of his personal liability was not specifically pleaded, the trial judge found defendant Hellriegel personally responsible for MRI's failure to disclose certain material facts in violation of the

provisions of RCW 21.20.010.[1] More specifically, the trial judge determined that the prospectus should have informed potential investors of the revoked Alki Bonair permit, of the $50,000 summary judgment, and of the lengthy list of limited partners awaiting redemption of their certificates. The judge further found that, as president of Investment Administrators, Inc., defendant Hellriegel was responsible for the prospectus and its contents, and that under RCW 21.20.430[2] he was therefore personally amenable to a suit by Mrs. Ludwig for any damages resulting from his nondisclosure. Defendant Hellriegel objected to this latter ruling,

---

[1] RCW 21.20.010 provides:

"Unlawful offers, sales, purchases. It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"(1) To employ any device, scheme, or artifice to defraud;

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

[2] RCW 21.20.430 provides in pertinent part:

"Civil liabilities—Survival, limitation of actions—Waiver of chapter void. (1) Any person, who offers or sells a security in violation of any provisions of RCW 21.20.140 through 21.20.220 and 21.20.230, or offers or sells a security by means of fraud or misrepresentation is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.

". . .

"(3) Every person who directly or indirectly controls a seller or buyer liable under subsection (1) or (2) above, every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of such a seller or buyer who materially aids in the transaction, and every broker–dealer, salesman or person exempt under the provisions of RCW 21.20.040 who materially aids in the transaction is also liable jointly and severally with and to the same extent as the seller or buyer, unless he sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable."

contending that he was surprised by the decision because the issue of his personal liability had neither been pleaded nor argued to the court. The trial judge then granted plaintiff's oral motion to amend the pleadings to conform to the proof, but also permitted defendant additional time to prepare and present a defense on the issue of his personal liability. At the subsequent hearing the trial court reaffirmed its earlier decision that Hellriegel was personally liable for the difference between what Mrs. Ludwig might recover from MRI in the dissolution proceeding and the amount of her investment, less the $1,200 sales commission and transaction fee. On appeal defendant assigns error to those findings of fact and conclusions of law relating to his personal liability.

At the outset we note that although defendant Hellriegel was found to have violated the disclosure provisions of RCW 21.20.010, the trial court relied upon RCW 21.20.430 as authority for awarding damages to compensate Mrs. Ludwig for her losses sustained as a result of Hellriegel's statutory transgressions. RCW 21.20.430(1) provides aggrieved buyers with a civil cause of action for damages against a seller of securities who either violates certain statutory requirements (the specified statutes, RCW 21.20-.140 through 21.20.220 and 21.20.230, involve registration procedures), or who sells securities by means of fraud or misrepresentation. Subsection 3 of the same statute further provides that persons who either control such sellers or who materially aid in the securities transaction are also jointly and severally liable with the seller.

■ It is well settled that when the language of a statute is clear and unambiguous, there is no room for judicial construction. *E.g., Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972); *Snow's Mobile Homes, Inc. v. Morgan,* 80 Wn.2d 283, 494 P.2d 216 (1972). We read RCW 21.20.430(3) as clearly imposing derivative liability on those persons who control or materially aid a seller who is guilty either of not observing the specified registration provisions or of fraud or misrepresentation. Although the findings of

fact fail to elaborate on the trial court's rationale with respect to this matter,[3] the record is devoid of any mention or allegation that MRI failed to properly discharge its registration obligations. For this reason we assume that the trial court equated MRI's failure to disclose all material facts in its prospectus in violation of RCW 21.20.010 with the language in RCW 21.20.430(1) allowing a private claim for damages against a person who "offers or sells a security by means of *fraud or misrepresentation*". (Italics ours.) Thus, before Hellriegel can be found jointly and severally liable for materially aiding the transaction (by reason of his responsibility for the prospectus and its contents), MRI as seller must first be liable under subsection 1 for fraud or misrepresentation.

██ While nondisclosure can under certain circumstances amount to fraud or misrepresentation, *see generally* W. Prosser, *Law of Torts* § 106, at 695 (4th ed. 1971), the concepts are not synonymous and should not be unqualifiedly equated with each other, as apparently was done by the trial court in the instant case.[4] Because the concepts of nondisclosure on the one hand and fraud or misrepresentation on the other are not identical, it is necessary for us to determine what the legislature intended by its use of the

---

[3]Finding of fact No. 10 provides in relevant part: "I find that those things [revocation of the building permit, the judgment in favor of the contractor, and the number of persons waiting to redeem] are material facts that required a change in the prospectus, and they require disclosure to any purchaser of the securities after the occurrence of those events, and the failure to disclose those things is a breach of D. W. Hellriegel's fiduciary duty. RCW 21.20.010, subsection 2, requires this type of disclosure and RCW 21.20.430, subsection 2, imposes liability on 'every partner, officer, director, or employee of such a seller who materially aids in the sale' and D. W. Hellriegel's actions in this case were exactly that."

[4]*But see Kaas v. Privette*, 12 Wn. App. 142, 150, 529 P.2d 23 (1974), in which the court stated, "Implicit in the holding of *Shermer v. Baker*, 2 Wn. App. 845, 472 P.2d 589 (1970), is the proposition that when a seller of securities makes an untrue statement or does not state a material fact necessary to an informed decision by a purchaser, such action is fraudulent per se." In view of our treatment of *Shermer*, we think the above quoted dictum from *Kaas* no longer retains its vitality. See footnote 6 and accompanying text.

40

words "fraud" and "misrepresentation" in RCW 21.20-.430(1). Our Supreme Court has held that when the legislature uses a term without defining it and such term has a well–known common–law meaning, it will be presumed that the legislature used the word in the sense in which it was understood at common law. *Northern Pac. Ry. v. Henneford,* 9 Wn.2d 18, 113 P.2d 545 (1941). Stated somewhat more specifically, legal terms in a statute are presumed to have been used in their legal sense in the absence of a legislative intent to the contrary. 2A C. Sands, *Statutes and Statutory Construction* § 47.30 (4th ed. 1973). In the instant case not only is there no special statutory definition of fraud or misrepresentation, but additionally, when adopting The Washington Securities Act (RCW 21.20) from the Uniform Securities Act, our legislature chose to omit the uniform act's declaration that "'[f]raud,' 'deceit,' and 'defraud' are not limited to common–law deceit." *See* Uniform Securities Act § 401(d), 7 U.L.A. 744 (1970). Under these circumstances we are of the opinion that "fraud" and "misrepresentation" as used in RCW 21.20.430(1) should be given their common–law meaning.

We find further support for this result under RCW 21.20.900, the "construction" section of our securities act, which provides:

> This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.

In accordance with the above statutory directive, we previously adhered to *Ellis v. Carter,* 291 F.2d 270 (9th Cir. 1961), and held that proof of the scienter element of common–law fraud was not necessary and that a damages action would lie under RCW 21.20.010 so long as the plaintiff relied upon a misrepresentation or omission of a material fact. *See Shermer v. Baker,* 2 Wn. App. 845, 472 P.2d 589 (1970). The Supreme Court in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375

(1976), has recently overruled the *Ellis* line of cases and held that in the absence of an allegation and proof of scienter—an intent to deceive, manipulate, or defraud—a private action for damages cannot be maintained under the Securities and Exchange Commission's rule 10b–5.[5] Thus our decision that "fraud or misrepresentation" as used in RCW 21.20.430(1) refers to common–law fraud is harmonious with recent federal cases which also make proof of scienter a prerequisite to recovery of damages.[6]

■ In *Turner v. Enders*, 15 Wn. App. 875, 552 P.2d 694 (1976), the court stated that actionable fraud or misrepresentation consists of the following nine elements, which must be proved by clear, cogent and convincing evidence:

(1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth

---

[5] 17 C.F.R. 240, 10b–5 (1976). Except for its jurisdictional requirement of an interstate transaction, rule 10b–5 is almost identical to our RCW 21.20.010.

[6] We also note that our legislature chose to substitute "fraud or misrepresentation" for section 410(a)(2) of the uniform act, which reads:

(a) Any person who

. . .

(2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission,

is liable . . .

Uniform Securities Act § 410(a), 7 U.L.A. 770 (1976). It is our opinion that the substitution of "fraud or misrepresentation" for the uniform act's material misstatement or omission is further indication that the legislature intended to provide a damage remedy only for "fraud" as that term was understood at common law. It may very well have been that the legislature anticipated the confusion and diversity of opinion which has afflicted the federal courts' application of an implied damages remedy to the language of rule 10b–5. *See, e.g., Ellis v. Carter,* 291 F.2d 270 (9th Cir. 1961); *White v. Abrams,* 495 F.2d 724 (9th Cir. 1974); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 47 L. Ed. 2d 668, 96 S. Ct. 1375 (1976).

of the representation; (8) his right to rely upon it; (9) his consequent damage.

*Turner v. Enders, supra* at 878. *Accord, Sigman v. Stevens–Norton, Inc.,* 70 Wn.2d 915, 425 P.2d 891 (1967). Even the most cursory examination of the record here indicates that plaintiff has fallen far short of proving common–law fraud or misrepresentation. In particular there is no evidence, let alone that type which rises to the stature of clear, cogent and convincing, which tends to prove the intent or scienter element, or that plaintiff relied upon the omissions found to be material by the trial court. Because of her failure to establish fraud or misrepresentation on the part of MRI, plaintiff is not entitled to recover against defendant Hellriegel under the derivative liability provisions of RCW 21.20.430(3). As stated previously, the imposition of such derivative liability presupposes a finding that the seller of the security is also liable, and in the absence of such a finding, plaintiff is precluded from invoking the remedies provided in RCW 21.20.430(3).

█ Lastly we address ourselves to the question of whether a private cause of action for damages can be implied from RCW 21.20.010 without the need to resort to the civil liabilities provisions of RCW 21.20.430. In *Shermer v. Baker, supra,* we held that when a *purchaser* violates RCW 21.20.010, any person injured as a result of such violations may maintain an action for damages. Such language would seemingly support a similar implied cause of action against a seller of securities. Our *Shermer* decision, however, was a response to the legislature's failure to provide a statutory damage remedy against a *purchaser* of securities while providing such a cause of action against a *seller* of securities. *Shermer v. Baker, supra* at 848. With the passage of Laws of 1975, 1st Ex. Sess., ch. 84, § 24, p. 370 (codified as RCW 21.20.430),[7] this erstwhile statutory

---

[7]RCW 21.20.430 provides in part:

"(2) Any person who buys a security by means of fraud or misrepresentation is liable to the person selling the security to him, who may sue either at law or in

omission has since been remedied, and accordingly we think it is appropriate to examine the reasoning behind *Shermer.*

In determining that RCW 21.20.010 contains an implied civil cause of action, *Shermer* relied upon RCW 21.20.900, previously referred to as the "construction" section of our securities act. Pursuant to the language of that section "to coordinate the interpretation and administration of this chapter with the related federal regulation," *Shermer* drew upon those federal cases implying a civil damages remedy under the Securities and Exchange Commission's rule 10b-5. While RCW 21.20.900 does seek to coordinate our interpretation with that of the federal courts, it also requires construction so as "to make uniform the law of those states which enact it". Previously we adverted to the fact that the Washington securities act is substantially adopted from the Uniform Securities Act and at this juncture we note that RCW 21.20.010 is identical to section 101 of the uniform act. That the uniform act did not contemplate an implied cause of action such as that which has been found in rule 10b-5 is clearly indicated by the official comments to section 101:

> This section is substantially the Securities and Exchange Commission's Rule X-10B-5, 17 Code Fed. Regs. § 240.10b-5, . . . except that the rule was expanded to cover the purchase as well as the sale of any security. . . .
> *The sanctions for the conduct which is made "unlawful" by § 101 . . . are found in Parts II, III and IV of the statute.* Those sanctions include administrative proceedings of various sorts . . .; judicial injunction under § 408; and criminal prosecution under § 409.

equity to recovery the security, together with any income received on the security, costs, and reasonable attorneys' fees or if the security cannot be recovered, the value of the security, any profits arising from the security, costs, and reasonable attorneys' fees."

[8]The official comment goes on to indicate that under § 410(h), "unlawful" conduct does not result in civil liability except as provided in section 410 (our

44

(Italics ours.) Uniform Securities Act § 101, Commissioners' Notes, 7 U.L.A. 695 (1970).[8] Our securities act contains equivalent sections providing for administrative (RCW 21.20.110 and 21.20.280), injunctive (RCW 21.20.390), and criminal (RCW 21.20.400) remedies. The language in those sections, as opposed to the restrictive wording of the provisions for civil liabilities in RCW 21.20.430, is broadly drafted to include violation of *any* provision of the securities act.

Reading our securities statute as a whole, *e.g., Greenwood v. State Bd. for Community College Educ.*, 82 Wn.2d 667, 513 P.2d 57 (1973), and giving due consideration to the efforts of the drafters of the uniform act to provide a complete and comprehensive securities law, we are of the opinion that a private cause of action should not be implied from RCW 21.20.010. When enumerating in RCW 21.20.430 those statutory sections whose violation would give rise to a damages claim, it would have been a simple matter for the legislature to have included RCW 21.20.010 had that been their intent. *Dominick v. Christensen*, 87 Wn.2d 25, 548 P.2d 541 (1976). Consideration of all the circumstances influencing their decision leads us to conclude that the omission was deliberate.

Accordingly, we hold that plaintiff has failed to prove a cause of action for damages under RCW 21.20.430 and that RCW 21.20.010 does not provide an alternative means under which she can maintain an action for damages. That portion of the judgment of the trial court imposing personal liability on defendant Hellriegel must be reversed.

PETRIE, C.J., and PEARSON, J., concur.

RCW 21.20.430). While our legislature did not choose to incorporate section 410(h) into the Washington securities act, we do not think this omission is of sufficient significance to overcome the comprehensiveness and apparent intended exclusiveness of the remedies that are specified.