In re WASHINGTON PUBLIC POWER SUPPLY SYSTEM SECURITIES LITIGATION.

MDL NO. 551.

United States District Court, W.D. Washington.

April 30, 1987.

Paul M. Bernstein, Chairperson, Bernstein, Litowitz, Berger & Grossman, New York City, Greenfield, Chimicles & Lewis, Richard D. Greenfield, Haverford, Pa., for plaintiff Henry Puchall.

Melvyn I. Weiss, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiff Joseph Harris.

James R. Irwin, Shidler, McBroom & Gates, Seattle, Wash., for plaintiffs David Gold and Marvin Frankel.

Michael Mines (Ex-officio), Betts, Patterson & Mines, Seattle, Wash., for plaintiff Chemical Bank.

Richard A. Cirillo, Rogers & Wells, New York City, for defendants.

Graham & Dunn, Bruce M. Pym, Seattle, Wash., for various class plaintiffs.

Rabin & Silverman, Allan K. Peckel, Kaufman, Malchman & Kirby, P.C., New York City, for plaintiffs David Gold and Marvin Frankel.

Berger & Montague, P.C., David Berger, Philadelphia, Pa., for plaintiff Rosalyn Mirotznik.

Wolf Popper Ross Wolf & Jones, Stephen D. Oestreich, New York City, for plaintiff Morris Massry.

Goodkind, Wechsler & Labaton, Stuart D. Wechsler, New York City, and Wolfstone, Panchot, Bloch & Kelley, J. Porter Kelley, Seattle, Wash., for plaintiff Paul J. Bonseigneur.

Barrack, Rodos & Bacine, Gerald Rodos, Philadelphia, Pa., for plaintiff Dr. Howard Sheldon.

Schoengold & Sporn, P.C., Samuel P. Sporn, New York City, for plaintiff Jack Schroeder.

David B. Gold, P.A., David B. Gold, San Francisco, Cal., Pomerantz, Levy, Haudek, Block & Grossman, Stanley Grossman, Stephen P. Hoffman, New York City, Thomas M. Geisness, Inc., P.C., James A. Doherty, Seattle, Wash., for plaintiff Leonard Laub.

Meredith & Cohen, P.C., Joel C. Meredith, Philadelphia, Pa., Alan Neigher, Westport, Conn., for plaintiff Louis Brazen and 776 Broadway.

Wolf Haldenstein Adler Freeman & Herz, Daniel W. Krasner, New York City, for plaintiff-intervenor Schein.

Harvey Greenfield, Kaufman, Malchman & Kirby, Irving Malchman, New York City, Franco, Asia, Bensussen & Finegold, Benjamin S. Asia, Seattle, Wash., for plaintiff Bryna Stepak.

Wolf, Block, Schorr & Solis–Cohen, Barry F. Schwartz, Philadelphia, Pa., for plaintiff Danny S. Fruchter.

Stull, Stull & Brody, Jules Brody, New York City, for plaintiff Lawrence Zucker.

Sachnoff Weaver & Rubenstein, Ltd., Lowell E. Sachnoff, Chicago, Ill., for Martin Woolin.

Saveri & Saveri, Guido Saveri, O'Brien & Hallisey, A Professional Corp., Jeremiah F.

Hallisey, San Francisco, Cal., for plaintiff The Doctors Co.

Much Shelist Freed Denenberg Ament & Eiger, P.C., Lawrence H. Eiger, Chicago, Ill., for plaintiff Ruth C. Sigmund, Trustee of Arthur W. Sigmund Residuary Trust and the Arthur W. Sigmund Marital Trust.

Bader & Bader, I. Walton Bader, White Plains, N.Y., for Malcolm Pine.

Albert R. Malanca, Donald S. Cohen, Kenneth G. Kieffer, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., Seattle, Wash., for Washington Public Utilities Group.

David F. Jurca, Linda Cochran, Richard White, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for Columbia defendants.

Michael F. Schumacher, Jerome Hillis, Mark Clark, Greg Keller, Hillis, Phillips, Cairncross, Clark & Martin, Seattle, Wash., for Inland Utilities.

Hugo E. Oswald, Jr., Stevan Phillips, Margaret Pageler, Jones, Grey & Bayley, Seattle, Wash., for Wahkiakum defendants.

Larry S. Gangnes, John Tomlinson, H. Peter Sorg, Jr., Lane, Powell, Moss & Miller, Seattle, Wash., for Oregon Public Entities.

Everett B. Clary, Donald Wessling, O'Melveny & Myers, Los Angeles, Cal., for Certain Washington Public Power Supply System Director defendants.

Dennis K. Bromley, George Sears, Robert Gordon, Pillsbury, Madison & Sutro, San Francisco, Cal., for Snohomish Group.

John D. Lowery, Thomas Burt, Thomas Hamerlinck, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for Small Utilities Group.

Malcolm S. Harris, John Mericle, Harris, Mericle, Orr & Bariault, Seattle, Wash., for Member Non–Participants.

Camden M. Hall, Foster, Pepper & Riviera, Seattle, Wash., for Member Non–Participants and City of Seattle, Wash.

Robert D. Stewart, David J. Lenci, Culp, Dwyer, Guterson & Grader, Seattle, Wash., for Washington Public Power Supply System.

Mark C. Rutzick, U.S. Dept. of Justice, Portland, Or., for U.S.—Bonneville Power Admin.

Irwin J. Sugarman, Robert Abrahams, Schulte, Roth & Zabel, New York City, for Law Firm defendants.

Otto G. Klein, III, Peter Danelo, Syrdal, Danelo, Klein & Myre, Seattle, Wash., for Engineer defendants.

Herbert M. Wachtell, Peter C. Hein, Wachtell, Lipton, Rosen & Katz, New York City, for Underwriter defendants.

James J. Hagan, Robert Woody, Simpson, Thacher & Bartlett, New York City, for Blyth Eastman Paine Webber, Inc.

## ORDER

WILLIAM D. BROWNING, District Judge.

This Order will address the constitutionality of RCW § 21.20.430(7) of the Washington State Securities Act (hereinafter 1986 Amendment). The 1986 Amendment has been attacked as violative of the Equal Protection and Commerce Clauses of the United States Constitution, the Washington Constitution's limitations on private bills, and separation of powers principles under both state and federal law.

The Washington State Securities Act (WSSA), RCW Chapter 21.20, was adopted in 1959. For purposes of the present motions, the two sections of the WSSA of primary concern are the fraudulent practices section, RCW § 21.20.010, modeled after § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, and the civil liabilities section, RCW § 21.20.430.

The standard of fault required for a finding of civil liability under the WSSA was not explicitly stated in the original legislation, and thus has been a matter of judicial interpretation over the years. In 1970, the Washington Court of Appeals held that a showing of negligence rather than scienter was adequate to recover under § 21.20.010. *Shermer v. Baker*, 2 Wash.App. 845, 472 P.2d 589 (Div. 2, 1970). In 1977, the Court of Appeals reversed itself and held that

§ 21.20.430(1) required proof of scienter in order to recover. *Ludwig v. Mutual Real Estate Investors,* 18 Wash.App. 33, 567 P.2d 658 (Div. 2, 1977). In 1980, the Washington Supreme Court expressly overruled *Ludwig,* holding that negligence was the applicable standard, and stating that "[T]he interpretation of RCW § 21.20.010 first announced in *Shermer* is the better rule. The legislature has not seen fit to disturb it and neither do we." *Kittilson v. Ford,* 93 Wash.2d 223, 608 P.2d 264, 266 (1980).[1]

Against this statutory and judicial backdrop, the Washington Public Power Supply System issued $2.25 billion in municipal bonds during the period 1977 to 1981 to finance the construction of Projects 4 and 5. In 1981, various problems led to the termination of Projects 4 and 5 and litigation ensued in Washington state courts to determine the contractual obligations of the various public entities that had promised to repay these bonds whether or not the plants became operational. In 1983, the Washington Supreme Court ruled that the participating Washington public entities lacked authority to assume such repayment obligation and declared the agreements promising repayment to bondholders to be void *ab initio. Chemical Bank v. Washington Public Power Supply System,* 99 Wash.2d 772, 666 P.2d 329 (1983), *cert. denied,* 471 U.S. 1075, 105 S.Ct. 2154, 85 L.Ed.2d 510. Following this decision, the Supply System defaulted on the bonds for Projects 4 and 5 and the present litigation was filed in 1983 seeking recovery, *inter alia,* under state and federal securities laws. Litigation brought by various bondholders on numerous state common law and statutory claims also continues in state court.[2]

In 1985, five years after the *Kittilson* decision, and at a time when the present litigation was well under way, the Washington Legislature passed an amendment to the civil liabilities section of the WSSA, RCW § 21.20.430(7) (hereinafter 1985 Amendment), raising the standard of fault applicable to municipal entities and officials to scienter while categorically excluding underwriters and bond counsel from the protection of this higher standard of fault.[3]

The 1985 Amendment was not made explicitly retroactive, and following extensive briefing and argument on the retroactivity and constitutionality of the Amendment, this Court held that it was only prospective in application, rendering any decision on its constitutionality unnecessary. Order dated January 24, 1986 at 11.

Within two weeks of the dissemination of this Court's ruling making the 1985 Amendment inapplicable to the present litigation, a bill similar to the 1985 Amendment, but containing language making it explicitly retroactive[4], had been introduced

---

1. In fact, prior to the initiation of this litigation, the only action ever taken by the Washington Legislature to address the applicable standard of fault under the WSSA occurred in 1981 when it amended the civil liabilities section to require a showing of scienter as against the State or its agencies. RCW 21.20.430(7). Since neither the State nor its agencies are parties in the present litigation, that amendment is not applicable here.

2. Two of the most significant such cases, *Haberman v. Washington Public Power Supply System,* and *Hoffer v. State of Washington,* are both pending on appeal in the Washington Supreme Court.

3. The 1985 Amendment to § 21.20.430(7) reads: "Notwithstanding subsections (1) through (6) of this section, if an initial offer or sale of securities that are exempt from registration under RCW 21.20.310 is made by this state or its agencies, political subdivisions, municipal or quasi-municipal corporations, or other instrumentality of one or more of the foregoing and is in violation of RCW 21.20.010(2), and any such issuer, member of the governing body, committee member, public officer, director, employee, or agent of such issuer acting on its behalf, or person in control of such issuer, member of the governing body, committee member, public officer, director, employee, or agent of such person acting on its behalf, materially aids in the offer or sale, such person is liable to the purchaser of the security only if the purchaser establishes scienter on the part of the defendant. The word "employee" or the word "agent," as such words are used in this subsection, do not include a bond counsel or an underwriter. Under no circumstances whatsoever shall this subsection be applied to require purchasers to establish scienter on the part of bond counsels or underwriters."

4. The 1986 Amendment added the following language to the Amendment passed in 1985: "The provisions of this subsection are retroactive and

in the Washington Legislature. By March 6, 1986, little more than a month after this Court's ruling, the 1986 Amendment to the WSSA had passed both houses of the Legislature and was subsequently signed into law by the Governor.

■ The stage was thus set for this renewed attack on the constitutionality of the "scienter" Amendment to the WSSA, an issue not previously ruled on by this Court. The Equal Protection and Commerce Clause arguments raised in the present briefing may well have merit because the 1986 Amendment, on its face, appears to protect local interests at the expense of out-of-state interests. Had this Amendment been in place prior to the default on the bonds for Projects 4 and 5, or prior to the initiation of this litigation, no compelling separation of powers question would be present and it would be necessary to closely examine these other constitutional challenges to the 1986 Amendment. It is not necessary to reach these other issues, however, because the Court here concludes that the actions of the Washington Legislature in adopting the 1986 Amendment violated the constitutional principle of separation of powers.

The principle of separation of powers is fundamental to our system of government in which the legislature is to enact laws of general application, and courts are to decide particular cases arising under those laws. Legislative actions which contravene the principle of separation of powers are unconstitutional. *See Buckley v. Valeo,* 424 U.S. 1, 118–24, 96 S.Ct. 612, 681–84, 46 L.Ed.2d 659 (1976) (per curiam); *Chadha v. Immigration and Naturalization Service,* 634 F.2d 408, 420 (9th Cir., 1980); *In re Salary of Juvenile Director,* 87 Wash.2d 232, 552 P.2d 163 (1976). It is not for the legislature to determine the rule of decision in a particular case, nor otherwise unduly impact judicial power to decide pending cases. *United States v. Klein,* 80 U.S. (13 Wall.) 128, 146–47, 20 L.Ed. 519 (1872).

The 1986 Amendment was adopted by the Washington Legislature with utter candor and forthrightness as to its purpose. The legislation was repeatedly acknowledged by its sponsors in official debate to be for the purpose of protecting Washington utility ratepayers by protecting local individuals and entities whose liability, if found to exist in the present litigation, would result in higher utility rates. As stated by Senate Majority Leader Bottinger, a prime sponsor of the bill, on the floor of the Senate, "the vote here [on the 1986 Amendment] is, in my opinion, shall the underwriting firm that handled that bond issue and their bond counsels pay the bondholders, or shall the rate payers—the people of the state of Washington. This bill says not the rate payers." Transcript of Senate Floor Proceedings on S.B. 3990, February 16, 1986, at 5. Opponents of the bill were equally explicit in acknowledging the blatant purpose of the legislation as protection of local ratepayers in this litigation. Thus, Senator Garrett stated, "... I'm shocked that our leadership is saying that the reason we want to do this is because of the rate payers in the state of Washington. In other words, we are wanting to help to confiscate this money [from the sale of bonds] because it may raise electrical rates in the state—and we are admitting—we are saying that is why we want to do it." *Id.* at 8. The Chairman of the Senate Judiciary Committee, Senator Talmadge, also an opponent of the bill, directly addressed the separation of powers argument when he cautioned his fellow senators that, "we shouldn't be using the Legislature as the appellate court when somebody disagrees with the outcome of the decision of the trial court in our state— be it a state court or a federal court." *Id.* at 7.

The legislative history leaves no room for doubt that the Washington Legislature intended this amendment to benefit the state's ratepayers by changing the rule entitling plaintiffs to relief, not by changing the remedy. The remedy remains the same after the 1986 Amendment, but the quan-

apply to any action commenced but not final before July 27, 1985. In addition, the provi-

sions of this subsection apply to any action commenced on or after July 27, 1985."

tum and nature of proof required has been changed to make it more difficult for plaintiffs to prevail against these public defendants. The Legislature has made it abundantly clear that it is not averse, per se, to a negligence standard under the WSSA, but rather it objects to that standard only as it affects its constituency. Indeed, the Legislature embraced the application of the less demanding standard to underwriters and bond counsel.[5]

Another justification, in addition to the protection of ratepayers, publicly given for passage of this legislation was that without the change in standard of fault it would be difficult to attract people to serve as officials of these local public utility entities. This was not, however, apparently perceived to be a problem before the present litigation was commenced. Had it been a recognized problem and dealt with by legislation prior to this litigation, no separation of powers problem would be implicated. Likewise, the prospective application of the new standard raises no such question. A serious question does exist, however, as to the weight this purpose can be given in the present analysis when such officials who are defendants here served without the benefit of this legislation. Moreover, this stated purpose could be fully accomplished by extending the scienter standard to officials but *not to the entities themselves.*

The clearly dominant, if not the sole, purpose of the Legislature in passing the 1986 Amendment was to protect the State's ratepayers by affecting the rule of decision in the present litigation. This purpose to use the legislative power to usurp and displace judicial power is constitutionally flawed.

Improper legislative motive has been held repeatedly by the United States Su-

preme Court to be a valid basis for finding a statute to be constitutionally infirm. *See e.g., Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29, 45 (1985) (Alabama voluntary prayer statute held unconstitutional under the Establishment Clause on the basis that, "[T]he Legislature enacted § 16-1-20.1 ... for the sole purpose of expressing the State's endorsement of prayer activities for one minute at the beginning of each school day."); *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 1684, 84 L.Ed.2d 751 (1985) ("Under the circumstances of this case, promotion of domestic business by discriminating against nonresidents is not a legitimate state purpose."); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265–66, 97 S.Ct. 555, 563–64, 50 L.Ed.2d 450 (1977) ("When there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference [to administrative or legislative prerogative] is no longer justified."); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (Racially discriminatory purpose and not just discriminatory impact must be shown for Equal Protection violation.); *Griffin v. School Bd. of Prince Edward County,* 377 U.S. 218, 231, 84 S.Ct. 1226, 1233, 12 L.Ed.2d 256 (1964) (Closing of public schools on the "grounds of race and opposition to desegregation do not qualify as constitutional."); *Gomillion v. Lightfoot,* 364 U.S. 339, 347, 81 S.Ct. 125, 130, 5 L.Ed.2d 110 (1960) ("Acts generally lawful may become unlawful when done to accomplish an unlawful end.") Although the majority of these cases have been in the Equal Protection context, legislative purpose has also been found to be a legitimate inquiry in challenges brought under the First Amendment[6], the Bill of Attainder

---

**5.** The 1986 Amendment states that, "Under no circumstances whatsoever shall this subsection be applied to require purchasers to establish scienter on the part of bond counsels or underwriters." RCW 21.20.430(7). The Participant Defendants argued orally that there are indeed underwriters and bond counsel in Washington, although it is noted that they are not parties

here, nor if they were, would their liability economically disadvantage the legislative constituency.

**6.** *See Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) and *Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

Clause [7], the Due Process Clause [8], and the Commerce Clause [9].

The constitutional implications of legislative purpose and motivation has also been the subject of considerable scholarly inquiry. *See e.g.* Brest, "Reflections on Motive Review," 15 *San Diego L.R.* 1141 (1978); Brest, "Palmer v. Thompson: An Approach to the Problem of Unconstitutional Legislative Motive," 1971 *Sup.Ct.R.* 95 (1971); Clark, "Legislative Motivation and Fundamental Rights in Constitutional Law," 15 *San Diego L.R.* 953 (1978); Ely, "The Centrality and Limits of Motivation Analysis," 15 *San Diego L.R.* 1155 (1978); Ely, "Legislative and Administrative Motivation in Constitutional Law," 79 *Yale L.J.* 1205 (1970).

█ It is important to keep in mind that an inquiry into legislative purpose involves an examination entirely different from that applicable to the determination of legislative intent. The former occurs without reference to the clarity of the statute itself, while the latter seeks legislative expression to illuminate the meaning of the statute.

The Court is cognizant of the dangers that exist in an inquiry into legislative purpose. Such an inquiry may be futile if the legislature re-enacts the flawed statute and thwarts the purpose examination by articulating a nonobjectionable purpose. Given the separation of powers context of this Court's inquiry, however, that option is no longer available to the Washington Legislature. There may also be problems in some cases in ascertaining the motive and purpose of a legislative body based upon the statements of only some of its members.[10] In the present case, the legislative record leaves no room for doubt, and indeed the utility defendants essentially concede, that the primary legislative purpose behind the 1986 Amendment was to protect local ratepayers from rate increases that could result if the Washington public defendants are found liable in this litigation.

While the attribution of a non-salutary motive or purpose to legislators may be perceived as insulting or demeaning, that should not be the case here. The legislative purpose here was not cloaked in deceit or hidden by subterfuge, but rather was proudly and clearly proclaimed. Legislators, like judicial and executive officers, have often thought their motive pure and correct only to be ultimately found to have acted unconstitutionally.[11]

█ Separation of powers concepts compel judicial deference to legislative processes and output. Only in the clearest of circumstances should a court invalidate a statute on the ground of improper purpose or motive as opposed to its discriminatory effects. Where such clear circumstances do exist, however, the judiciary must be willing to take necessary action to enforce constitutional requirements.

In *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872), the United States Supreme Court refused to permit undue legislative interference in the judicial process. It is no more permissible for the Washington Legislature to engage in such tampering with the judicial branch than it is for the Congress of the United States. The 1986 Amendment represents an attempt by the Washington Legislature to protect its constituents from the consequences of pending litigation. That is an unconstitutional intrusion on the judicial responsibility to resolve cases and controversies.

The 1986 Amendment, RCW 21.20.430(7), is violative of separation of powers and constitutionally void as it applies to this litigation.

---

**7.** *See United States v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946).

**8.** *See Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

**9.** *See Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985).

**10.** For a discussion of some of the various factors that may be considered in ascertaining purpose *see* discussion in *Village of Arlington Heights,* 429 U.S. at 266–68, 97 S.Ct. at 563–65.

**11.** That, for example, was the situation in *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985).

**418**

*Motions to reconsider*

The pending motions to reconsider this Court's rulings on extraterritorial application of the WSSA and the existence of an implied right of action under RCW 21.20.-010 have been carefully considered and are hereby DENIED.