[No. 45080-8-I.   Division One.   May 14, 2001.]

WILLIAM KIRKHAM, ET AL., *Respondents*, v. HESTER E. SMITH, ET AL., *Appellants*.

*Charles S. Ferguson*, for appellants.

*Jordan M. Hecker* (of *Hecker & Feilberg, P.S.*), for respondents.

COLEMAN, J. — This case comes before the court on an appeal and cross-appeal from judgment on claims for breach of contract, misrepresentation, and violation of the Franchise Investment Protection Act (FIPA). After purchasing a travel agency from the Kirkhams in late April 1997, the Smiths operated the business at a loss for seven months before defaulting on the property's lease and violating the

purchase agreement. The Kirkhams sued the Smiths for amounts owing on a promissory note executed with the sale of the business and for reimbursement of lease payments they made after the Smiths' default. The Smiths filed counterclaims for misrepresentation and violation of FIPA. The trial court found for the Kirkhams on their claims regarding violation of the purchase agreement, but also found that they had violated FIPA by failing to tell the Smiths about a significant loss in corporate business in the months prior to the sale of the agency. The court also found that the Smiths waived their right to rescind the purchase agreement.

The main issues before this court are: (1) Whether the trial court erred by applying a "preponderance of the evidence" standard instead of a "clear, cogent, and convincing" standard in its evaluation of the FIPA claim, and (2) Whether the record contains substantial evidence to support the trial court's finding that the Smiths waived their right to rescission.

## FACTS

Appellants Kirkhams sold Uniglobe All-Star Travel, Inc., to respondents Smiths in late April 1997. Under the terms of the purchase agreement, the Smiths agreed to pay $25,000 up front and an additional $25,000 in monthly installments of $1,000 beginning November 1997. In the negotiation for the sale of the business, the Kirkhams represented it as a "break-even" operation and provided financial documentation to support this portrayal. The Kirkhams also indicated that the business had been successful due in large part to its corporate account base. However, the Kirkhams did not show the Smiths documents revealing that 75 percent of the agency's corporate clients had canceled their accounts.

The Smiths operated the business at a loss for approximately seven months, despite investing $28,400 in an attempt to turn things around. In November 1997, the

Smiths defaulted on the premises and signage leases, thereby violating the purchase agreement and making the Kirkhams liable for past-due lease payments. The Smiths also failed to make the first payment on the amount owing to the Kirkhams from the sale of the agency. The Kirkhams paid the balance of the lease, satisfied a judgment for past-due payments, and continued making payments until the property was rented to another tenant.

On December 30, 1997, the Kirkhams filed a claim against the Smiths for violation of the purchase and sale agreement and for reimbursement of the lease payments. The Smiths filed several counterclaims, including breach of contract, conversion, and misrepresentation. Approximately three weeks before trial, the Smiths successfully moved the court for permission to add a counterclaim for violation of FIPA.

The trial court found for the Smiths on their breach of contract claim but concluded that they were not entitled to recovery because they failed to prove any damages. The court concluded that there was not clear, cogent, and convincing evidence to support the Smiths' common law misrepresentation claim but found by a preponderance of the evidence that the Kirkhams violated FIPA. Finally, the court found that the Smiths waived their right to rescind the contract and violated the purchase agreement by defaulting on the premises and signage leases. The Kirkhams' award was offset by the award to the Smiths, with a net award of $15,382.08 granted to the Kirkhams.

## DISCUSSION

Approximately three weeks before the trial date, the trial court granted the Smiths' motion to add a counterclaim for a FIPA violation. Following trial and argument on this claim, the trial court concluded that the Kirkhams violated the act by failing to tell the Smiths about the loss of corporate clients and by misrepresenting the business as a "break-even" operation. The court held that the Smiths

were entitled to damages in the amount of $39,557.46, to be offset by damages awarded the Kirkhams.

Addition of Counterclaim and Standard of Review

In their cross-appeal, the Kirkhams argue that the trial court erred by allowing the Smiths to add their FIPA violation counterclaim three weeks before trial. The trial court allowed the amendment to the Smiths' counterclaims, reasoning that the FIPA claim required "essentially the same proof as the allegations in the existing misrepresentation claim" and that the Kirkhams would "therefore not be prejudiced by the late addition of the counterclaim." The Kirkhams maintain that they were prejudiced not so much by the court's decision to allow the late addition of the counterclaim, but more by the court's subsequent evaluation of the claim under a preponderance of the evidence standard after applying a clear, cogent, and convincing standard to the misrepresentation claim.

CR 15(a) provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "A motion to amend the pleadings is addressed to the sound discretion of the trial court and will not be overturned except for abuse of that discretion." *Culpepper v. Snohomish County Dep't of Planning & Cmty. Dev.*, 59 Wn. App. 166, 169, 796 P.2d 1285 (1990). Leave to amend should be freely given unless it would result in prejudice to the nonmoving party. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 165, 736 P.2d 249 (1987). In determining whether prejudice would result, a court can consider potential delay, unfair surprise, or the introduction of remote issues. *Herron*, 108 Wn.2d at 165-66.

Here, the trial court recognized the similarity between the essential elements of the Smith's FIPA claim and their already-existing misrepresentation claim and concluded that the amendment would not prejudice the Kirkhams. We agree with this assessment and uphold the trial court's decision to allow the amendment as a proper exercise of its discretion.

Closely related to the Kirkhams' argument regarding the trial court's decision to allow the amendment is their argument regarding the appropriate standard of proof for evaluation of a FIPA claim. The Kirkhams acknowledge that this is an issue of first impression but contend that the court erred by evaluating the evidence under a preponderance standard instead of a clear, cogent, and convincing standard. In support of their position, they cite *Morris v. International Yogurt Co.*, 107 Wn.2d 314, 322-23, 729 P.2d 33 (1986) for the proposition that the antifraud sections in FIPA and the Securities Act of Washington are essentially the same.[1] From *Morris*, the Kirkhams refer the court to *Ludwig v. Mutual Real Estate Investors*, 18 Wn. App. 33, 41, 567 P.2d 658 (1977) wherein the court stated that the terms "fraud" and "misrepresentation" must be given their common law meaning under the Securities Act and must be proven by clear, cogent, and convincing evidence.

The Smiths point out that *Ludwig* was overruled by *Kittilson v. Ford*, 93 Wn.2d 223, 225, 608 P.2d 264 (1980). In *Kittilson*, the court held that a fraud claim under the Securities Act does not require proof of scienter and to that extent is at variance with the common law definition of fraud. *See also Shermer v. Baker*, 2 Wn. App. 845, 856, 472 P.2d 589 (1970).[2] The Smiths argue that based on the

---

[1] RCW 19.100.170 (FIPA) states in part:

"It is unlawful for any person in connection with the offer, sale, or purchase of any franchise or subfranchise in this state directly or indirectly:

". . . .

"(2) To sell or offer to sell by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading."

RCW 21.20.010(2) (Securities Act) similarly makes it unlawful for a person, in connection with the offer, sale, or purchase of any security "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

[2] Although the burden of proof was not an issue in *Shermer*, it is interesting to note that the jury instruction approved by the court employed a preponderance of the evidence standard.

court's holding regarding fraud claims under the Securities Act in *Kittilson* and based on the similarity between the fraud provisions in the Securities Act and FIPA, a FIPA claim likewise does not require the same level of proof as common law fraud.

It is well established in Washington that the standard of proof in civil fraud cases is clear, cogent, and convincing evidence. *Seggern v. Dep't of Soc. & Health Servs.*, 28 Wn. App. 332, 334, 622 P.2d 1307, 625 P.2d 170 (1981); *see also Hughes v. Stusser*, 68 Wn.2d 707, 709, 415 P.2d 89 (1966). In order to prove fraud, the plaintiff must establish each of the following elements by clear, cogent, and convincing evidence: (1) A representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) his right to rely upon it, (9) his consequent damage. *Turner v. Enders*, 15 Wn. App. 875, 878, 552 P.2d 694 (1976).

As evidenced by elements 4 and 5 above—and as recognized by the court in *Kittilson*—it is clear that common law fraud requires proof of a knowing and intentional misrepresentation. This level of requisite culpability corresponds directly to the use of a clear, cogent, and convincing standard of proof in evaluating common law fraud claims. By contrast, the language of the FIPA misrepresentation provision (RCW 19.100.170(2)) allows for its application to an unintentional misrepresentation or omission. This section contains no requirement "that the actor intend that his misrepresentation or improper concealment be acted upon by the person to whom the misrepresentation is made or from whom the omission was concealed." *Shermer*, 2 Wn. App. at 856. It is for this reason that a misrepresentation claim under FIPA should be evaluated under a preponderance of the evidence standard as opposed to the more stringent clear, cogent, and convincing evidence standard required for proof of common law fraud. The trial court in

this case applied the correct standard of proof, and we uphold its decision regarding the Smith's FIPA claim.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KENNEDY and ELLINGTON, JJ., concur.